[Cite as *In re B.I.C.*, 2012-Ohio-3519.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE )

IN RE GUARDIANSHIP OF B.I.C.

C.A. No.    11CA0028

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY PROBATE COURT
COUNTY OF WAYNE, OHIO
CASE No.    G-66149-03

DECISION AND JOURNAL ENTRY

Dated: August 6, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Craig C. moved to terminate the guardianship of Harry and Mary B. over his minor child, B.I.C. The probate court granted his motion because it determined that the guardianship was temporary and that the conditions that necessitated it no longer existed. Harry and Mary have appealed, assigning as error that the probate court applied the incorrect test for deciding whether to terminate the guardianship and that its factual findings were against the manifest weight of the evidence. We affirm because the probate court properly analyzed whether there was good cause to terminate the guardianship and its findings that the guardianship was temporary and that there was good cause to terminate it were not against the manifest weight of the evidence.

BACKGROUND

{¶2} When B.I.C. was seventeen months old, Harry and Mary, B.I.C.'s maternal grandparents, applied to the probate court to be appointed his guardians. B.I.C.'s mother agreed to the guardianship. Craig received notice of the proceeding, but did not consent or object to the application. According to a letter that Harry and Mary's lawyer sent to Craig about the application, Harry and Mary were seeking "to be named as temporary guardians" of B.I.C., they intended to "cover[ ] him with medical insurance coverage," and they would "not be requesting any child support . . . while he remains in their care." Upon review of the application, the probate court determined that a guardianship was necessary and appointed Harry and Mary as B.I.C.'s guardians. Under the court's letters of guardianship, the guardianship was over B.I.C.'s person only, did not contain any limitations, and was for an indefinite period.

{¶3} In 2007, three years after the court appointed Harry and Mary as B.I.C.'s guardians, Craig moved to terminate the guardianship. He later withdrew his motion. According to Craig, the reason that he withdrew his motion was because, although he was ready for B.I.C. to come live with him, he had not had much visitation time with B.I.C. and decided that he wanted to develop their relationship more before asking B.I.C. to undergo such a large transition. He, therefore, sought, instead, to increase his visitation time over the next few years.

{¶4} In 2011, Craig again moved to terminate the guardianship. Following a hearing, the probate court granted his motion. The court found that the guardianship was only meant to be temporary and that the reasons for it no longer existed. It, therefore, determined that there was good cause to terminate it under Section 2111.46 of the Ohio Revised Code. Harry and Mary have appealed the probate court's decision, assigning four errors.

TERMINATION OF GUARDIANSHIP

{¶5} Harry and Mary's first assignment of error is that the probate court applied the incorrect test when it decided whether to terminate the guardianship. Their second assignment of error is that the court incorrectly found that the guardianship was meant to be temporary and that there were conditions present at the time that the guardianship was created that, once remedied, rendered the guardianship no longer necessary. Their third assignment of error is that the court incorrectly terminated the guardianship absent a showing that there had been a change in circumstances in B.I.C.'s home environment. Because these assignments of error raise interrelated issues, we will consider them together.

{¶6} Regarding the correct test for termination of a guardianship, under Section 2111.46 of the Ohio Revised Code, "[if] a guardian has been appointed for a minor before the minor is over fourteen years of age, the guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless the ward selects another suitable guardian." In general, "the decision to grant or deny a motion to remove a guardian lies within the sound discretion of the probate court." *In re Guardianship of Spangler*, 11th Dist. Nos. 2007-G-2800, 2007-G-2802, 2011-Ohio-6686, ¶ 67; *In re Guardianship of Godsey*, 2d Dist. No. 2002-CA-69, 2003-Ohio-2692, ¶ 9 n.1. In *Masitto v. Masitto*, 22 Ohio St. 3d 63 (1986), the Ohio Supreme Court held, however, that, if a parent has relinquished his custodial rights to his child's grandparents, the probate court may not modify the child's placement unless it is in the child's best interest under the test for modification of custody under Section 3109.04(B) of the Ohio Revised Code. *Id*. at 67.

{¶7} In *Masitto*, the Ohio Supreme Court explained that "[w]hether . . . a parent relinquishes rights to custody is a question of fact" to be determined by the trial court. *Masitto v.*

*Masitto*, 22 Ohio St. 3d 63, 66 (1986). In that case, the Supreme Court upheld the trial court's finding that Mr. Masitto had relinquished his right to custody, explaining that Mr. Masitto had "signed a written instrument whereby he consented to the appointment [of a guardian]" and "later consented to a divorce decree which in essence incorporated his agreement . . . ." *Id*. at 64, 66.

{¶8}  This Court has not previously considered the circumstances under which a parent should be deemed to have relinquished his custodial rights to his child who has been placed in a guardianship. The Ohio appellate courts that have considered the question have, universally, looked at whether the guardianship was permanent or temporary in nature. *In re Adkins*, 11th Dist. No. 2006-L-250, 2007-Ohio-4629, ¶ 19; *In re Guardianship of Dillon*, 5th Dist. No. 05CA008, 2005-Ohio-5217, ¶ 25; *In re Guardianship of Smith*, 12th Dist. No. CA2002-12-012, 2003-Ohio-4247, ¶ 10; *In re Guardianship of Godsey*, 2d Dist. No. 2002-CA-69, 2003-Ohio-2692, ¶ 11; *In re Termination of Guardianship of Hendrickson*, 152 Ohio App. 3d 116, 2003-Ohio-1220, ¶ 16 (7th Dist.); *In re Guardianship of Zornes*, 4th Dist. No. 96CA35, 1997 WL 441854, *4 (Aug. 4, 1997). Those courts have recognized that, in a custody dispute between a parent and third party, a parent who is suitable has a paramount right to custody of his child. *Godsey*, 2003-Ohio-2692, at ¶ 11; *see In re Perales*, 52 Ohio St. 2d 89, 97 (1977) ("[P]arents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children.") (quoting *Clark v. Bayer*, 32 Ohio St. 299, paragraph one of the syllabus (1877)). They have also reasoned that "a parent's agreement to surrender temporary custody, through a guardianship or otherwise, is not a relinquishment of a parent's right to preferential treatment in a subsequent determination of custody." *Godsey*, 2003-Ohio-2692, at ¶ 11. "In

such a case . . . a parent typically must establish nothing more than current suitability to be a parent." *Id*. We agree with the conclusion that a parent who has only temporarily relinquished custody of his child to a third party has not forfeited his paramount right to custody of the child.

{¶9} Regarding whether Harry and Mary's guardianship was temporary or permanent, the probate court found that it was temporary because Craig did not specifically waive any of his parental rights and because the letter that Harry and Mary's lawyer sent to Craig while their application was pending made a reference to what would happen "while [B.I.C.] remains in their care." Harry and Mary have asserted that its finding was incorrect, arguing, in essence, that the finding was against the manifest weight of the evidence. As recently clarified by the Ohio Supreme Court, when reviewing the manifest weight of the evidence in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, __ Ohio St. 3d __, 2012-Ohio-2179, ¶ 20 (quoting *Tewarson v. Simon*, 141 Ohio App. 3d 103, 115 (9th Dist. 2001)).

{¶10} As the probate court noted in its decision, Harry and Mary did not assert that the guardianship was permanent until Craig moved to terminate it. Rather, in the letter that they sent Craig at the time of their application, they wrote that they had petitioned "to be named as temporary guardians" for B.I.C. While Mary testified that she understood "temporary" to mean until B.I.C. was 18, the probate court was entitled not to believe her, considering that her application did not ask for the guardianship to last until that time. The probate court's letters of guardianship also do not indicate that the guardianship will last until B.I.C.'s eighteenth birthday. It merely provides that the guardianship will be for an "[i]ndefinite" length. *See In re*

*Guardianship of Godsey*, 2d Dist. No. 2002-CA-69, 2003-Ohio-2692, ¶ 12 (concluding that it was reasonable for the trial court to find that a guardianship that was for an indefinite length to be temporary in nature). Furthermore, Harry and Mary have not argued that the passage of time converted what was initially a temporary guardianship into a permanent one. Upon review of the record, we conclude that the probate court did not lose its way when it found that Harry and Mary's guardianship of B.I.C. was temporary.

**{¶11}** Because Harry and Mary's guardianship was temporary in nature, the trial court did not have to determine whether terminating it was in B.I.C.'s best interest under Section 3109.04(B). Instead, the court correctly only considered whether there was good cause to terminate the guardianship. Harry and Mary's first, second, and third assignments of error are overruled.

## GOOD CAUSE

**{¶12}** Harry and Mary's fourth assignment of error is that the probate court's finding that there was good cause to terminate the guardianship was against the manifest weight of the evidence. They have argued that Craig is a stranger to B.I.C. and refuses to involve himself in his son's life. They have further argued that Craig has refused to contact B.I.C.'s school or attend parent/teacher conferences, that he failed to attend B.I.C.'s tonsillectomy, and that he has a history of violence against members of his family. Regarding Craig's history of violence, they have argued that Craig physically abused B.I.C.'s mother, that he admitted to giving B.I.C. "butt-whooping[s]" in the past, and that he admitted that he continues to give "butt-whooping[s]" to his two-year-old daughter.

**{¶13}** Craig testified that he monitors B.I.C.'s school performance through B.I.C.'s school's website, which lets him review his grades. He said that the reason he has not attended

many of B.I.C.'s activities or his surgery is because Harry and Mary either have not told him about the events or have told him at the last minute when it was too late for him to change his work schedule. He also testified that, although there was a time that he "put [his] hands on [B.I.C.'s mother]," it only happened one time and he received anger-management counseling afterward, which helped him to get much better control over his temper. He also testified that he had not spanked B.I.C. since 2007, disciplining him with yelling and time-outs instead. *But see* R.C. 2919.22(B)(3) (prohibiting corporal punishment only if it "is excessive under the circumstances and creates a substantial risk of serious physical harm to the child."). He further testified that he did not think there was any need for the guardianship and that he believed he was in a position to have B.I.C. living full time in his house.

{¶14} B.I.C.'s mother testified that Craig abused her multiple times during their marriage, not only on the occasion that led to his domestic violence conviction. His current wife, however, testified that she had been in a relationship with Craig since 2005 and that he had never struck her. While Mary testified that there was an occasion when B.I.C. did not want to go with Craig because Craig had "reamed his ass" the prior weekend, Craig and his wife explained that an "ass reaming" meant yelling.

{¶15} The probate court found that, although Craig was convicted of domestic violence in 2003, there was no evidence that he had had any issues since that time. To the contrary, it found that he had altered his behavior as a result of counseling and had altered the way he disciplines B.I.C. It also found that Craig was "now able to provide food, clothing, and shelter for his son and is in a long-term stable marriage." It, therefore, concluded that the reasons for the guardianship no longer existed.

**{¶16}** We conclude that the probate court did not lose its way when it found that Craig was a suitable parent and that the reasons for the guardianship no longer existed. Its determination that there was good cause to terminate the guardianship is not against the manifest weight of the evidence. Harry and Mary's fourth assignment of error is overruled.

## CONCLUSION

**{¶17}** The probate court applied the correct test when it decided whether to terminate Harry and Mary's guardianship of B.I.C., and its decision was not against the manifest weight of the evidence. The judgment of the Wayne County Probate Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Probate Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, P. J.
BAIRD, J.
<u>CONCUR.</u>

(Baird, J., retired of the Ninth District Court of Appeals, sitting by assignment pursuant to §6(C), Article IV, Constitution.)


<u>APPEARANCES:</u>

RENEE J. JACKWOOD, Attorney at Law, for Appellants.

NORMAN R. "BING" MILLER, JR., Attorney at Law, for Appellee.